UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SHERRY ANN WILEY                                    CIVIL ACTION

VERSUS                                             NO. 21-933

THE DEPARTMENT OF ENERGY, *et al.*                  SECTION M (2)

## ORDER & REASONS

Before the Court are two motions to dismiss, one by defendant Board of Trustees of the

University of Alabama ("the Board"),[1] the other by defendant-individuals associated with the

University of Alabama at Birmingham ("the UAB Individual Defendants").[2]  Both motions were

originally set for submission on September 9, 2021;[3] however, in the wake of Hurricane Ida and

General Order 21-12 of the United States District Court for the Eastern District of Louisiana, the

Court ordered that the motions be rescheduled for submission on October 7, 2021.[4]  Local Rule

---

[1] R. Doc. 134.  In her complaint, plaintiff Sherry Ann Wiley named the "University of Alabama Hospital," which she also refers to as "University of Alabama," "UAB Hospital," and "Hospital Administration," as a defendant. R. Doc. 1 at 1, 2, 3, 8, 11, 16 & 18.  Wiley obtained summonses for the University of Alabama Hospital, University of Alabama UAB, and the Psychiatric Administration Executive Office.  R. Doc. 17 at 11, 57 & 89.  These entities, however, are not active pursuant to the Alabama Secretary of State's corporate records and do not have the capacity to sue or be sued.  R. Doc. 134-1 at 1-2; *see also Business Entity Records*, Ala. Sec'y of State, https://arc-sos.state.al.us/cgi/corpname.mbr/input (last visited Oct. 6, 2021).  The University of Alabama at Birmingham ("UAB") and its hospital operate as a division of the Board.  R. Doc. 134-1 at 2.  Therefore, explains the Board, in naming the University of Alabama Hospital, including Wiley's variations of its name and any sub-entities of the University of Alabama Hospital, Wiley essentially named the Board as a defendant.  *Id.*

[2] R. Doc. 135.  Wiley also named the "University of Alabama Hospital employees" as defendants.  R. Doc. 1 at 1.  She alleges that "Several physicians, emergency department and Attending Physicians, Residents, Interns, Physician Assistants, Nurse Practitioners, Nurses, Nurses' Aid, Medical Floor Technicians, Hospital Administration, Intake Employees, and Registration personnel" were "key participants" in the alleged wrongdoing.  *Id.*; *see also* R. Doc. 7 at 2 (specifically naming eight hospital employees and "many other Psy Technicians, Nurses, Nurse Aid, employees").  The individuals Wiley summoned as hospital employees were Dr. O'Leary; Dr. Sung; Dr. Hanover; Dr. Birur; Dr. Lovvorn; Dr. Carl; Beth Kilgore; Elizabeth Cain, Dr. and Administrator; Mr. Rajpara; and Tosha Toney, Case Manager.  R. Doc. 17 at 67, 69, 71, 73, 75, 77, 79, 81, 83 & 87.  However, in the UAB Individual Defendants' motion, which lists the parties represented, Rajpara is not included.  *See* R. Doc. 135 at 1.  The UAB Individual Defendants maintain that they do not represent Rajpara, as he is not an employee of UAB.  *See* R. Doc. 99 at 1 n.7.  Wiley has previously identified Rajpara as connected with the U.S. Small Business Administration.  R. Doc. 93 at 2.

[3] R. Docs. 134-2; 135-2.

[4] R. Doc. 150.

7.5 provides that a memorandum in opposition to a motion must be filed no later than eight days before the noticed submission date, which in this case was September 29, 2021.  Plaintiff Sherry Ann Wiley, proceeding *pro se* and *in forma pauperis*, has not filed a memorandum in specific opposition to either motion.  However, in resolving the subject motions, the Court will take into account arguments she has made in opposition to other defendants' motions to dismiss.[5]  Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting both motions to dismiss on the basis of the Board and the UAB Individual Defendants' Eleventh Amendment immunity, which deprives this Court of subject-matter jurisdiction.[6]

## I.  BACKGROUND

This case arises from Wiley's plan to launch an indoor aquaculture business.[7]  After its launch in January of 2020, numerous persons and entities, including the Board and the UAB Individual Defendants, allegedly harassed, intimidated, and stalked Wiley in order to steal her business plan.[8]  Wiley alleges that on March 19, 2020, the Birmingham Police Department illegally detained her at the Board's hospital because "people hav[e] sons and friends on the police force and want[] to get [her] business plan and business documents [she] kept with [her] in a tote bag [she] kept in [her] possession at all times."[9]  There, for 43 days, she was allegedly kidnapped and

---

[5] Although she did not specifically oppose either the Board's or the UAB Individual Defendants' motion, Wiley did file two oppositions to the SCORE defendants' motion to dismiss her claims against them, which motion was also rescheduled for submission to October 7, 2021.  R. Docs. 142; 143; 144; 150.  It is possible that her oppositions to the SCORE defendants' motion were meant to serve as universal oppositions to all motions to dismiss set for October 7.  R. Doc. 144 at 3 ("I plead with this court not to dismiss this case and to hold SCORE and its employees accountable *as all the rest*.") (emphasis added).  The Court recognizes that this is a generous reading but, given the liberal construction courts are to lend to *pro se* filings, the Court will construe her prior oppositions as oppositions to the subject motions as well.

[6] Wiley's claims are also subject to dismissal (1) for failure to properly allege standing; (2) for failure to state a claim under the *Iqbal* and *Twombly* standards; and (3) pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii).

[7] R. Doc. 1 at 3.

[8] *Id.* at 10-11.

[9] *Id.* at 10-11, 16.

raped by unnamed persons, harassed, and forced to take "harm filled" drugs, thereby permitting other unnamed persons to steal her business and erase any memory or knowledge she had of it.[10] The drugs allegedly did damage to her amygdala, hippocampus area, Wernicke area, Broca area, limbic system, and temporal lobe.[11]  She alleges that she has since been working daily to reverse the damage caused by the drugs forced upon her and now does not trust medical personnel.[12]

Wiley filed her lawsuit on May 11, 2021,[13] and asserts against roughly 30 defendants several theories of liability, including: (1) conspiracy; (2) fraud; (3) conspiracy to commit fraud; (4) civil rights violations; (5) HIPAA rights and fraud violations; (6) privacy rights violations; (7) identity theft; (8) obstruction of justice; (7) intellectual property theft; (8) collusion; (9) constitutional rights violations; (10) defamation, slander, and libel; (11) kidnapping; (12) Medicaid fraud; (13) Veterans Affairs medical benefits payment fraud; (14) human trafficking; (15) extortion; (16) embezzlement;[14] (17) hate crimes; and (18) medical malpractice.[15]  Wiley demands $100 million in damages from each defendant[16] and for "[e]ach participant [in the alleged wrongdoing] to lose their job [and] never b[e] able to work in their profession's industry ... [in] a federal, state, city, county or private capacity."[17]

## II.    PENDING MOTION

In its motion, the Board argues that Wiley's claims should be dismissed pursuant to Rule 12 of the Federal Rules of Civil Procedure – specifically, Rule 12(b)(1) for lack of subject-matter jurisdiction due to the Board's Eleventh Amendment immunity and sovereign immunity, Rule

---

[10] *Id.* at 10-12.
[11] *Id.* at 11.  In her complaint, Wiley mistakenly uses the phrase "boca area" instead of "Broca area," which is presumably what she meant.
[12] *Id.*
[13] *Id.* at 1.
[14] *Id.*
[15] R. Doc 6 at 1-2.
[16] R. Docs. 1 at 17-18; 54.
[17] R. Doc. 6 at 1.

12(b)(2) for lack of personal jurisdiction, Rule 12(b)(3) for improper venue, Rule 12(b)(5) for failure to effectuate proper service of process, and Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[18]  Additionally, the Board contends that 28 U.S.C. § 1915(e)(2)(B)(i)-(iii) requires dismissal of Wiley's *in forma pauperis* complaint when, as here, a plaintiff's claims are "frivolous or malicious."[19]

In its motion, the UAB Individual Defendants similarly argue that Wiley's claims should be dismissed pursuant to Rule 12 of the Federal Rules of Civil Procedure – specifically, Rule 12(b)(1) for lack of subject-matter jurisdiction due to the UAB Individual Defendants' Eleventh Amendment and sovereign immunity when sued in their official capacities, Rule 12(b)(2) for lack of personal jurisdiction, Rule 12(b)(3) for improper venue, and Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[20]  The UAB Individual Defendants also argue that 28 U.S.C. § 1915(e)(2)(B)(i)-(iii) requires dismissal of Wiley's *in forma pauperis* complaint because her claims are "frivolous or malicious."[21]

In opposing a previous motion to dismiss also set for submission on October 7, 2021, Wiley simply referenced, without explanation or specification, the assertions made in her complaint and prayed for the Court not to dismiss her case – as barebones an opposition as is conceivable.[22]  As explained above,[23] the Court will consider this same response as her opposition to the Board's and the UAB Individual Defendants' motions to dismiss.

---

[18] R. Doc. 134-1 at 5-12.
[19] *Id.* at 12.
[20] R. Doc. 135-1 at 6-13.
[21] *Id.* at 13-14.
[22] R. Docs. 143; 144 at 3.
[23] *See supra* note 5 & accompanying text.

## III.   LAW & ANALYSIS

### A.  Rule 12(b)(1) Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a party to challenge a court's subject-matter jurisdiction.  "[A] claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory authority or constitutional power to adjudicate' the claim." *Griener v. United States*, 900 F.3d 700, 703 (5th Cir. 2018) (quoting *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012)).  The party asserting jurisdiction bears the burden of proving that subject-matter jurisdiction exists. *Id.*  "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  "A motion to dismiss for lack of subject-matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claims entitling him to relief." *Sureshot Golf Ventures, Inc. v. Topgolf Int'l, Inc.*, 754 F. App'x 235, 235 (5th Cir. 2018) (citing *Wagstaff v. U.S. Dep't of Educ.*, 509 F.3d 661, 663 (5th Cir. 2007)).

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).  And, if a court dismisses pursuant to Rule 12(b)(1), it must do so without prejudice. *Cox, Cox, Filo, Camel & Wilson, L.L.C. v. Sasol N. Am., Inc.*, 544 F. App'x 455, 456-57 (5th Cir. 2013) ("[T]o dismiss with prejudice under Rule 12(b)(1) is to disclaim jurisdiction and then exercise it.  Our precedent does not sanction the practice ...."); *see also OnPath Fed. Credit Union v. U.S. Dep't of Treasury, Cmty. Dev. Fin. Institutions Fund*, 2020 WL 5749166, at *2 (E.D. La. Sept. 25, 2020).

5

**B.  Eleventh Amendment Immunity**

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions," as here, "the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161; *see also Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994); *Residents of Gordon Plaza, Inc. v. Cantrell*, 2020 WL 6503618, at *3 (E.D. La. Nov. 5, 2020)  The Board and the UAB Individual Defendants each present a jurisdictional attack based on Eleventh Amendment immunity.  *See Jefferson v. La. State Sup. Ct.*, 46 F. App'x 732 (5th Cir. 2002) ("Eleventh amendment immunity is a jurisdictional issue that cannot be ignored, for a meritorious claim to that immunity deprives the court of subject matter jurisdiction of the action.") (quoting *McDonald v. Bd. of Miss. Levee Comm'rs,* 832 F.2d 901, 906 (5th Cir.1987)) (alteration omitted). As such, the Court considers this jurisdictional argument first.[24]

---

[24] Although no party raises the issue of standing, the Court should examine this threshold question.  *See, e.g.*, *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 93-96 (1998); *Cox v. City of Dall.*, 256 F.3d 281, 303-04 (5th Cir. 2001).  "The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of the jurisdictional doctrines.'"  *FW/PBS, Inc. v. City of Dall.*, 493 U.S. 215, 231 (1990) (quoting *Allen v. Wright,* 468 U.S. 737, 750 (1984)) (alteration omitted); *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) ("[Standing] requires federal courts to satisfy themselves that 'the plaintiff has "alleged such a personal stake in the outcome of the controversy" as to warrant his invocation of federal-court jurisdiction.'") (quoting *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)) (emphasis omitted).

The Supreme Court in *Calderon v. Ashmus* explained that before addressing an Eleventh Amendment argument, it "must first address whether th[e] action ... is the sort of 'Article III' 'case or controversy' to which federal courts are limited."  523 U.S. 740, 745 (1998).  Both the Board's and the UAB Individual Defendants' emphasis on the alleged far-fetched and speculative nature of the complaint calls into question Wiley's standing.  R. Docs. 134-1 at 2; 135-1 at 3.  To have standing to sue in federal court, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Wiley's claims do not appear to satisfy the first and second requirements.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560).  To establish that the injury is fairly traceable "requires something more than conjecture ('The Exxon complex in Baytown emits pollutants, and I live in Baytown') but less than certainty ('I was outside the Baytown complex on November 15, between 1:00 and 5:00 pm, at which time hydrogen sulfide was emitted, and I recall my throat feeling sore even though it did not feel sore earlier in the day')."  *Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 968 F.3d 357, 368 (5th Cir. 2020).

The Board's and the UAB Individual Defendants' contention that Wiley's claims "amount to nothing more than rampant, vague speculation and conjecture" suggests that Wiley might not be able to establish the first two requisites for standing.  *See* R. Docs. 134-1 at 2; 135-1 at 3.  Thus, Wiley's claims may be too conjectural or hypothetical, rather than concrete and actual, to sufficiently establish injury in fact as would confer standing.  *See id.*

*See id.*; *see also Price v. Irons*, 2020 WL 1638376, at *2 (E.D. La. Apr. 2, 2020), *aff'd*, 832 F. App'x 904 (5th Cir. 2021), *cert. denied*, 2021 WL 4508111 (U.S. Oct. 4, 2021).

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The immunity protects states from suit by one of its own citizens, as well. *Hans v. Louisiana*, 134 U.S. 1 (1890) (holding that a state is immune from suits brought by one of its own citizens in addition to those by citizens of another state or citizens or subjects of any foreign state). Suits against a state are barred "unless the state has waived its sovereign immunity[25] or Congress has expressly abrogated it." *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013); *see also Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 277 (5th Cir. 2005).

Eleventh Amendment immunity is far-reaching and bars both federal and state claims against a state. *Bouchgl v. Tonti Mgmt. Co.*, 2021 WL 40188, at *2 (E.D. La. Jan. 5, 2021) ("This immunity extends to suits brought under state law ... [and i]t also applies to suits under federal law unless it is shown that Congress 'expressly intended to abrogate sovereign immunity.'") (citing *Richardson v. S. Univ.*, 118 F.3d 450, 453 (5th Cir. 1997)); *see also Laxey v. La. Bd. of Trs.*, 22

---

Moreover, it is unclear whether Wiley's injury, a stolen business plan currently in the hands of an unknown individual, is fairly traceable to the Board's and UAB Individual Defendants' alleged conduct. Wiley's standing, then, is doubtful.

[25] The Eleventh Amendment does not define the scope of a state's sovereign immunity; it is instead "but one particular exemplification of that immunity." *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 753 (2002). The Fifth Circuit has recently explained that the term "Eleventh Amendment immunity" is actually a "misnomer" "because that immunity is really an aspect of the Supreme Court's concept of state sovereign immunity and is neither derived from nor limited by the Eleventh Amendment." *Can. Hockey, L.L.C. v. Tex. A&M Univ. Athletic Dep't*, 2021 WL 4096928, at *3 n.3 (5th Cir. 2021) (quoting *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 240-41 (5th Cir. 2005)). The term, however, "has been used loosely and interchangeably with 'state sovereign immunity' to refer to a state's immunity from suit without its consent in federal courts." *Meyers*, 410 F.3d at 240-41. Accordingly, although both the Board and the UAB Individual Defendants argue that they are immune pursuant to both Eleventh Amendment and sovereign immunity, the Court will only address Eleventh Amendment immunity. *See* R. Docs. 134-1 at 5-6 (arguing that (1) the Board is immune from suit under the Eleventh Amendment; and (2) any state law claims are also barred by the Board's sovereign immunity); 135-1 at 6, 8 (arguing that (1) the UAB Individual Defendants are immune from suit under the Eleventh Amendment; and (2) they also have sovereign immunity in their official capacities pursuant to the Alabama constitution).

F.3d 621, 623 (5th Cir. 1994) ("The Eleventh Amendment is like a defensive lineman, barring all suits in law or equity against an unconsenting state."). Even if a state is not a named party, but the action is in essence one against the state, "the State is the real party in interest and is entitled to invoke the Eleventh Amendment's protection." *Lewis v. Clarke*, 137 S. Ct. 1285, 1290 (2017). Eleventh Amendment immunity does not only shield the state itself; it "will extend to any state agency or other political entity that is deemed the 'alter ego' or an 'arm' of the State." *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 688-89 (5th Cir. 2002) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)). Further, "as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984).

There is, however, a narrow exception to Eleventh Amendment immunity when a plaintiff seeks prospective injunctive relief: the *Ex parte Young* exception. This exception "permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004); *see also Spec's Fam. Partners, Ltd. v. Nettles*, 972 F.3d 671, 680 (5th Cir. 2020). "[T]he state official, 'by virtue of his office,' must have 'some connection with the enforcement of the challenged act, or else the suit is merely making him a party as a representative of the state, and thereby attempting to make the state a party.'" *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019) (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)) (alterations omitted), *cert. denied*, 141 S. Ct. 1047 (2021). To determine whether the *Ex parte Young* exception applies, a court must make "a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as

prospective." *Va. Off. for Protection & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) (quotation and alteration omitted).

### i. The Board is entitled to Eleventh Amendment immunity

The Board argues that Wiley's suit against it is barred by the Eleventh Amendment because (1) the Board, as an agency of the state of Alabama, cannot "be made a defendant in any court of law or equity";[26] and (2) there is no evidence that Congress abrogated[27] or the state of Alabama waived its immunity.[28]   Alabama has not waived its sovereign immunity.  Its state constitution provides that "Alabama shall never be made a defendant in any court of law or equity," Ala. Const. art. I, § 14, and "the Supreme Court [of the United States] has recognized that this [provision] prohibits Alabama from waiving its immunity from suit." *Selensky v. Alabama*, 619 F. App'x 846, 849 (11th Cir. 2015) (citing *Alabama v. Pugh*, 438 U.S. 781, 782 (1978)).  Accordingly, the state of Alabama is protected from suit in this federal court.[29]

This immunity extends not only to suits against Alabama itself, but also to suits against Alabama's state agencies. *See Pennhurst,* 465 U.S. at 100; *see also Garrett*, 983 F. Supp. 2d at

---

[26] R. Doc. 134-1 at 7 (quoting Ala. Const. art. I, § 14) (emphasis omitted).

[27] It is clear that Alabama has not waived its sovereign immunity, and Wiley has not demonstrated that Congress has expressly abrogated the immunity with respect to Wiley's claims.  "Congress intend[s] to abrogate sovereign immunity only if its intention is 'unmistakably clear in the language of the statute.'" *Dellmuth v. Muth*, 491 U.S. 223, 230 (1989) (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (1985)).  Here, Wiley does not identify a single statute that either the Board or the UAB Individual Defendants have violated.  *See* R. Doc. 1. Therefore, there is no statute from which the Court can begin to discern whether Congress abrogated Alabama's sovereign immunity.  Despite reading Wiley's *pro se* complaint liberally, as required, the Court will not speculate about whether there exist any statutes Wiley might have raised to argue that Congress abrogated Alabama's sovereign immunity.

[28] R. Doc 134-1 at 5-6.

[29] The Board notes that "it is unclear what claims [Wiley] purports to bring against the Board and whether she intends to bring them under federal or state law." R. Doc. 134-1 at 2.  It is unnecessary for the Court to determine whether Wiley alleges that the Board violated state or federal law, as the Eleventh Amendment bars both kinds of claims.  *See DeKalb Cty. Sch. Dist. v. Schrenko*, 109 F.3d 680, 688 (11th Cir. 1997) (observing that the Eleventh Amendment bars suits against a state in federal court whether based on alleged violations of federal law or state law); *Garrett v. Talladega Cty. Drug & Violent Crime Task Force*, 983 F. Supp. 2d 1369, 1375-76 (N.D. Ala. 2013) ("The immunity applies to *both* federal and state claims.") (emphasis in original); *Cardwell v. Auburn Univ. Montgomery*, 941 F. Supp. 2d 1322, 1329 (M.D. Ala. 2013) ("Eleventh Amendment immunity applies 'regardless of whether the claim is based on state law or federal law' ....") (quoting *Flood v. Ala. Dep't of Indus. Rels.,* 948 F. Supp. 1535, 1542 (M.D. Ala. 1996)).

1376 ("A state's Eleventh Amendment immunity also extends to statewide agencies.") (citing *Pennhurst*).  "[T]he Board [of Trustees of the University of Alabama] is an 'arm of the state' itself – and not an individual officer ...."  *Page v. Hicks*, 773 F. App'x 514, 518 (11th Cir. 2019); *see also Eubank v. Leslie*, 210 F. App'x 837, 844 (11th Cir. 2006) ("The University of Alabama Board of Trustees is a state agency, not a state official acting in its official capacity."); *Ex parte Bd. of Trs. of Univ. of Ala.*, 264 So. 3d 850, 854 (Ala. 2018) ("Our cases have made it abundantly clear that the Board is entitled to § 14 [constitutional] immunity.").  As an arm of the state, the Board is entitled to Eleventh Amendment immunity, barring Wiley's claims, whether state or federal, against it.  *See Kimble v. Par. of Jefferson*, 2021 WL 4255232, at *9 (E.D. La. Apr. 8, 2021) ("When a state agency is the named defendant, the Eleventh Amendment bars suits for both money damages and injunctive relief unless the state has waived its immunity."), *adopted*, 2021 WL 4243313 (E.D. La. Sept. 17, 2021).[30]  This immunity deprives the Court of subject-matter jurisdiction over those claims, so they must be dismissed.

### ii.  The UAB Individual Defendants are entitled to Eleventh Amendment immunity

The UAB Individual Defendants, a group of hospital employees, argue that the Eleventh Amendment bars Wiley's suit against them because (1) the individuals, sued in their official capacities, are "state officials"; (2) a suit against a state official is equivalent to a suit against the state itself, which is impermissible; and (3) there is no evidence that Congress abrogated the state's immunity or that the state waived its immunity in relation to Wiley's claims.[31]

---

[30] While Wiley seeks both monetary relief (*viz.*, $100 million from the hospital) and prospective injunctive relief (*viz.*, that all employees be forbidden from working in their prospective fields in the future), no exception to Eleventh Amendment immunity applies with respect to the Board.  The Eleventh Amendment shields a state from all suits, including those for monetary damages and injunctive relief, absent the state's consent or Congress's abrogation of immunity, but the amendment "permits suits for prospective injunctive relief against state officials acting in violation of federal law."  *Frew*, 540 U.S. at 437.  The Board is not a state official, but a state agency or arm of the state.  Therefore, the *Ex parte Young* exception barring prospective injunctive relief against state officials does not apply.

[31] R. Doc. 135-1 at 6-8.

It is unnecessary to decide whether state hospital employees – doctors, administrators, and case managers – are "state officials" because Alabama law extends immunity to both state officials and state employees. *See Ala. State Univ. v. Danley*, 212 So. 3d 112, 122 (Ala. 2016) ("[T]he State and its agencies [including institutions of higher learning] have absolute immunity from suit in any court. ... State officers and employees, in their official capacities and individually, are also absolutely immune from suit when the action is, in effect, one against the state."). All state officials and employees acting in their official capacity are immune from civil liability in any suit. Ala. Code § 36-1-12(b) (citing Ala. Const. art. I, § 14). This grant of immunity cannot be circumvented merely by suing a state officer or employee in their individual capacity; however, the bar does not apply to "'actions for damages brought against State officials in their individual capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, subject to the limitation that the action not be, in effect, one against the State.'" *Barnhart v. Ingalls*, 275 So. 3d 1112, 1125 (Ala. 2018) (quoting *Ex parte Moulton*, 116 So.3d 1119, 1141 (Ala. 2013)).

In determining whether an action against a state officer or employee is, in fact, one against the state, Alabama courts consider two factors: (1) the source of damages; and (2) the nature of the action. *Meadows v. Shaver*, 2020 WL 6815066, at *3 (Ala. Nov. 20, 2020). In examining the source-of-damages factor, courts consider "whether a result favorable to the plaintiff would directly affect a contract or property right of the State, whether the defendant is simply a conduit through which the plaintiff seeks recovery of damages from the State, and whether a judgment against the officer would directly affect the financial status of the State treasury." *Ex parte Wilcox Cty. Bd. of Educ.*, 285 So. 3d 765, 776 (Ala. 2019) (internal quotation marks and citations omitted). In examining the nature-of-the-action factor, courts consider whether the duties that the officers

allegedly breached existed solely because of their official positions. *Meadows*, 2020 WL 6815066, at \*3. Immunity applies, and suit is barred, "'whenever the acts that are the basis of the alleged liability were performed within the course and scope of the officer's employment.'" *Birmingham Broad. (WVTM-TV) LLC v. Hill*, 303 So. 3d 1148, 1159 (Ala. 2020) (quoting *Ex parte Davis*, 930 So. 2d 497, 500-01 (Ala. 2005)).

Here, Wiley asserts a bevy of claims against the UAB Individual Defendants for alleged actions performed while on duty at the hospital.[32] The UAB Individual Defendants note that while Wiley does not expressly state whether she brings this suit against them in their individual or official capacities, "there is no evidence" that Wiley intended to assert her claims against them in their individual capacities, and "[i]t appears that the UAB Individual Defendants have been named as [d]efendants in this matter because they were all allegedly working at the University of Alabama at Birmingham Hospital ... during the time of the alleged wrongful acts committed against [Wiley]."[33] So, they conclude, the employees "would have had to be acting in their official capacities to [commit wrongs alleged against them while working] at UAB Hospital."[34] The Court agrees.

When a complaint fails to specify whether that suit is brought against the state officer in his official or personal capacity, as here, a court infers the character of the action from "the course of the proceedings." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Based on the character of the action as best deciphered from Wiley's vague and conclusory complaint, the UAB Individual Defendants are immune from Wiley's claims in both their official and individual capacities. If the action is against the UAB Individual Defendants in their official capacities, any and all claims

---

[32] R. Docs. 1 at 17-18; 6 at 1.
[33] R. Doc. 135-1 at 2-3 & 8 n.6.
[34] *Id.* at 8.

asserted against them are barred by statute.  *See* Ala. Code § 36-1-12(b).  If the action is against

the UAB Individual Defendants in their individual capacities, the suit is, in fact, one against the

State, thus barring any individual-capacity claims.

In her complaint, Wiley does not allege any specific acts committed by Dr. O'Leary, Dr.

Sung, Dr. Hanover, Dr. Birur, Dr. Lovvorn, Dr. Carl, Beth Kilgore, Dr. Cain, or Tosha Toney.[35]

Instead, Wiley merely alleges that she was wronged at the state hospital generally.  Thus, she fails

to link any individual to any specific wrong.  In this way, the recovery she seeks is actually from

the state, not from the individuals themselves.  *See Wilcox Cty. Bd. of Educ.*, 285 So. 3d at 776 (an

action is one against the state when a defendant is simply a conduit through which the plaintiff

seeks recovery of damages from the state).  That she served a summons on each individual

defendant only as an employee of the UAB Hospital – a subset of the Board and an arm of the state

– further evinces both that the UAB Individual Defendants were not served in their individual

capacities and that they are a conduit for recovery against the state.  Thus, under the source-of-

damages factor, the action against the UAB Individual Defendants is, in fact, one against the state

and such a suit is barred.  The same conclusion follows from the nature-of-the-action factor.  While

Wiley fails to associate any wrong with any specific individual, she complains about her hospital

detention and drug regimen, which plainly implicate duties that existed solely because of the UAB

Individual Defendants' official positions.  *See Meadows*, 2020 WL 6815066, at *3.  Hence, the

suit is, in fact, one against the state, and, as such, the UAB Individual Defendants are entitled to

immunity.

Although not raised by her, the fact that Wiley seeks prospective injunctive relief – that the

UAB Individual Defendants be forever enjoined from working in their respective fields – could

---

[35] *See* R. Doc. 1.

trigger the *Ex parte Young* exception, removing the claim from the ambit of immunity. "'A suit is not 'against' a state ... when it seeks prospective, injunctive relief from a state actor based on an alleged ongoing violation of the federal constitution.'" *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015) (quoting *K.P. v. LeBlanc,* 729 F.3d 427, 439 (5th Cir. 2013)) (alteration omitted).  Assuming Wiley's complaint can be read to assert federal violations,[36] the exception does not apply because "to comply with the dictates of *Ex parte Young*, [Wiley's] lawsuit must allege that the defendants' actions are *currently* violating federal law." *Williams on Behalf of J.E. v. Reeves*, 954 F.3d 729, 737 (5th Cir. 2020) (emphasis in original).  Wiley's allegations against the UAB Individual Defendants concern conduct long past and confined to a discrete 43-day period.[37]  There is no mention of an ongoing violation of federal law.[38]  Therefore, the UAB Individual Defendants are entitled to Eleventh Amendment immunity, which bars each of Wiley's claims, whether brought under state or federal law, whether brought against them in their official or individual capacities, and despite the nature of the relief sought.  Accordingly, all claims asserted against the UAB Individual Defendants must be dismissed.

## IV.   CONCLUSION

Both the Board and the UAB Individual Defendants are entitled to Eleventh Amendment immunity, barring each of Wiley's claims against them.  The immunity strips the Court of subject-matter jurisdiction over her claims and requires their dismissal.[39]  Lacking jurisdiction, the Court

---

[36] In her rather free-ranging complaint, Wiley does not specify whether she seeks relief under state or federal law. *See* R. Doc. 1.  Thus, the UAB Individual Defendants correctly note that "it is unclear what claims [Wiley] purports to bring against [them] and whether she intends to bring them under federal or state law."  R. Doc. 135-1 at 2.

[37] R. Doc. 1 at 10-11.

[38] *See* R. Doc. 1.

[39] In finding that the Board and the UAB Individual Defendants are both immune from Wiley's suit, the Court recognizes that this immunity also mandates dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).  The statute provides that "the court shall dismiss the case [brought *in forma pauperis*] at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  Because the Board and the UAB

does not address all other arguments for dismissal made by the Board and the UAB Individual

Defendants.[40]  Accordingly, for the foregoing reasons,

IT IS ORDERED that the Board's motion to dismiss (R. Doc. 134) is GRANTED, and

Wiley's claims against it are DISMISSED WITHOUT PREJUDICE.

---

Individual Defendants are entitled to immunity from the monetary damages Wiley seeks, dismissal is appropriate under § 1915(e)(2)(B)(iii).  Dismissal is also appropriate under § 1915(e)(2)(B)(ii) due to Wiley's failure to comport with the requisite pleading requirements.  *See infra* note 40.  Section 1915 "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  *Denton v. Hernandez*, 504 U.S. 25, 32 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).  Claims that are clearly baseless "'are claims describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar.'"  *Id.* (quoting *Neitzke*, 490 U.S. at 328).  Here, for the reasons noted below, Wiley does not meet the requisite pleading requirements and has not stated a claim on which relief may be granted, so dismissal is also appropriate on the basis of § 1915(e)(2)(B)(ii).

[40] The Court touches briefly on the argument that Wiley's complaint is subject to dismissal for failure to satisfy the *Iqbal/Twombly* pleading standard.  "Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading."  *Alamo Forensic Servs., L.L.C. v. Bexar Cty.*, 2021 WL 2492846, at *2 (5th Cir. June 17, 2021).  It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation and alteration omitted).  "Although a complaint need not contain detailed factual allegations, 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,' are not entitled to an assumption of truth."  *Martin Res. Mgmt. Corp. v. Fed. Ins. Co.*, 2021 WL 4269565, at *2 (5th Cir. Sept. 20, 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (alteration omitted).

"Factual allegations must be enough to raise a right to relief above the speculative level ...."  *Twombly*, 550 U.S. at 555.  Accordingly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" so that its "factual content ... allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 557).

Wiley's complaint does not contain sufficient factual detail to comport with the requisite pleading standard.  She claims that the Board and the UAB Individual Defendants detained her and administered harmful, unnecessary drugs to her; however, she provides no supporting factual allegations to elevate these claims from anything more than conclusory assertions.  *See* R. Doc. 1 at 10-12 (failing to state by whom she was detained and forced to take harmful drugs, let alone any details of the alleged events).  As the UAB Individual Defendants note, "[n]ot a single one of the UAB Individual Defendants is specifically alleged to have committed any wrongful act."  R. Doc. 135-1 at 2.  In the only pleading that mentions the UAB Individual Defendants specifically, Wiley includes a list of defendants' names and addresses, but fails to identify which claims are asserted against which defendants.  *See* R. Doc. 7 at 2.  Absent identification of a specific defendant committing specific acts, the complaint fails to give fair notice to either the Board or the UAB Individual Defendants of the claims alleged against them.  Consequently, Wiley's unspecific complaint, fortified with only "rampant, vague speculation and conjecture," fails to satisfy the pleading requirements set forth in Rule 8, *Twombly*, or *Iqbal*.  *See* R. Docs. 134-1 at 2; 135-1 at 3.  Although *pro se* complaints are to be construed liberally, they must still conform to established pleading standards.

IT IS FURTHER ORDERED that the UAB Individual Defendants' motion to dismiss (R. Doc. 135) is GRANTED, and Wiley's claims against them are DISMISSED WITHOUT PREJUDICE.

New Orleans, Louisiana, this 1st day of November, 2021.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE